DETWILER REAL ESTATE & INVEST. CO. v. EDWARD V. E. RAUSCH.

TIME FOR FILING BILL OF EXCEPTIONS BEGINS TO RUN WHEN RIGHT OF APPEAL OCCURS.

Where a motion for a new trial includes the ground that the verdict was contrary to law, it includes error of the court in the charge to the jury, and a bill of exceptions prepared within forty days from the overruling of the motion is prepared in time.

[For other cases in point, see 4 Cyc. Dig., "Error," §§ 216-231, 1108-1118.—Ed.]

[Syllabus approved by the court.]

ERROR to Lucas common pleas court.

**F. E. Calkins** and **L. W. Storey,** for plaintiff in error..

**M. D. Merrick** and **J. C. Jones,** for defendant in error.

**PARKER, J.**

In this case the action in the court below was brought by Edward V. E. Rausch against the Detwiler Real Estate and Investment Company to recover commissions for selling real estate. The defendant filed an answer, in which,.after admitting that it was a corporation, and that its principal office was in the city of Toledo, Ohio, it denied each and

every other allegation contained in the plaintiff's petition. The case went to trial to a jury, and there was a finding in favor of the plaintiff for the full amount he claimed and judgment was entered upon the verdict.

The plaintiff in error claims that the main issue, i. e., as to whether it was liable at all upon this claim, was not submitted by the court to the jury.

It appears that there were two companies having their offices and places of business in the same room, or the same building in this city, one the plaintiff in error, the Detwiler Real Estate and Investment Company, the other the I. H. Detwiler Company; that the real estate and investment company is what is called a holding company, a company which holds the title to certain real estate, and that it owns considerable real estate in the city; that the I. H. Detwiler Company is a real estate brokerage company. I may say that besides these two companies there are quite a number of corporations that also have their offices in the same building and room. It does not appear that the stockholders of these two companies are identical. It appears that one George K. Detwiler is the president of the I. H. Detwiler Company, the brokerage company, and that he is the vice president of the Detwiler Real Estate and Investment Company; that the plaintiff, Rausch, went to George K. Detwiler at this place of business and said to him—taking the statement of Mr. Rausch—that he had a prospective buyer for Superior street property, and asked him about the Superior street hotel property; the price of it, and if it was for sale. Detwiler said that it was for sale, that everything he had was for sale. Rausch told Detwiler that he had a buyer that he had been showing some property and he thought he could interest him in that property and maybe could make a deal for it, and asked him the dimensions of the property, etc. Now that is the way the negotiations opened up, which resulted in Mr. Rausch's finding a purchaser for this property. It appears that in the talk with Mr. Detwiler there was no inquiry made and nothing said pointedly as to who held the legal title to this property, or as to whom Mr. Detwiler was representing in the transaction, whether himself, the I. H. Detwiler Company, or the Real Estate and Investment Company, or some other person or company; but Mr. Rausch appears to have supposed that he was dealing with George K. Detwiler personally. Mr. Detwiler says, however, that he was, as a matter of fact, in the transaction representing the I. H. Detwiler Company, the real estate brokerage company; that all of the real estate owned by the Real Estate and Investment Company had been put into the hands of the I. H. Detwiler Company

Real Estate & Invest. Co. v. Rausch.

for sale, and that he, as vice president of the Detwiler Real Estate and Investment Company, had no authority to sell property of that company, and had no authority to select agents for that company and authorize them to sell its property.

Now the property was sold, as I have said, and it appears that in the course of negotiations a Mr. Chalmers, who was an officer of and interested in the I. H. Detwiler Company, took an active part in the transaction, which would have some tendency to show that it was really the I. H. Detwiler Company that was moving in the business. When the deed came to be made for the property, it was signed by George K. Detwiler, as vice president of the I. H. Detwiler Real Estate and Investment Company, and it appears that he, in the absence of the president, was authorized to sign deeds. Of course, it was necessary to have a deed from the owner of the legal title to the purchaser. This deed was signed by him as vice president, and also by the secretary of the company, in pursuance of the authority contained in the by-laws of the company.

So it appears that the controversy was as to whether this was a transaction between the I. H. Detwiler Company, represented by George K. Detwiler and Mr. Rausch, or the Detwiler Real Estate and Investment Company, represented by George K. Detwiler and Mr. Rausch, and there was evidence tending to support both claims. If George K. Detwiler was in fact representing the I. H. Detwiler Company and the Detwiler Real Estate and Investment Company had done nothing in the premises whereby it was estopped from making the defense, there would be no liability upon the part of that company to Mr. Rausch for his commission. And it appears that if it was the I. H. Detwiler Company that was being represented, there would be one rule according to the customs in the city of computing the amount that would be due Mr. Rausch as commission; and if he was representing the owner, the Detwiler Real Estate and Investment Company, he would be entitled to a commission under another rule; that in the first case he would be entitled to share in the commission; in the second case he would be entitled to all the commission customarily made upon sales of real estate.

Now it seems to us that during the trial of the case something must have occurred to give it a direction or aspect which caused the court to see very distinctly that there was a question as to the amount of commission Mr. Rausch might be entitled to in the one case or in the other, but caused him to lose sight of the fact that there was another question involved, i. e., whether the defendant in this case was liable at all for any commission. If it was not a transaction for the plaintiff in error, if

43 O. C. C. Vol. 29.

Lucas County.

George K. Detwiler was not representing the plaintiff in error, then there would be no commission due it. When the court came to charge the jury he said to them:

"It is therefore evident that the only controversy between the parties to this action is as to the amount of compensation that should be awarded the plaintiff. It is conceded that the usual and customary commission for procuring purchasers of real estate in this city is 5 per cent on the first $1,000, and 2½ per cent on the balance of the purchase price. The burden is upon the plaintiff to prove by a preponderance of the evidence the fair and reasonable value of the services rendered in procuring a purchaser for said real estate. If you find from a preponderance of the evidence that there was no agreement as to the amount of compensation to be allowed the plaintiff for procuring a purchaser for said real estate, then the plaintiff is entitled to recover the reasonable value of the services rendered by him in that behalf. If you find that there was no agreement as to the amount of compensation to be paid the plaintiff, then for the purpose of determining the fair and reasonable value of the services by him performed in procuring a purchaser for said real estate, you may take into consideration the amount of compensation usually and customarily paid in this city for such services, though that amount is not to be taken as conclusive. If, however, you find that there was an agreement as to the amount of compensation to be paid the plaintiff, that agreement is controlling."

Further along the court instructs the jury:

"Having determined the compensation to which the plaintiff is entitled, you will then compute thereon and add thereto interest at the rate of six per cent per annum from the sixteenth day of February, 1906, to the first day of this term of court, to wit, April 2, 1906, and return the same with your verdict."

And then he hands to them a verdict which is prepared, which reads: "We find that there is due to the plaintiff from the defendant, the sum of $——," submitting to them the single question as to the amount due to the plaintiff, saying to them in substance that the plaintiff is entitled to recover some amount—what amount you are to determine under the evidence.

We think that the charge was erroneous; that the main issue in the case was not submitted to the jury at all.

It is said by counsel for defendant in error that this question is not properly presented to this court, because the motion for a new trial does not specifically state as a ground that the court erred in the charge, and the bill of exceptions was not prepared and filed within forty days

Real Estate & Invest. Co. v. Rausch.

of the time that this error in the charge was committed, that the time was not protracted and carried forward, as it might have been by filing a motion for a new trial on that ground, giving the court another opportunity to rule upon it, and thereby making the time for the bill of exceptions forty days from the time of the ruling upon the motion. It has been held that though it is not necessary that an objection and exception to the charge to the jury by the trial court be included in a motion for a new trial, when it is in fact included in such motion, the time in which the bill of exceptions may be filed begins to run from the overruling of the motion instead of from the time of the committing of the error in the charge; whereas the time will begin to run at the time of such error in case it is stated as a ground for a new trial in the motion therefor. The decisions bearing upon that will be found in the cases of *Weaver* v. *Railway*, 55 Ohio St. 491 [45 N. E. Rep. 717]; *Cincinnati St. Ry.* v. *Wright*, 54 Ohio St. 181 [43 N. E. Rep. 688; 32 L. R. A. 340].

The motion for a new trial in this case contained the following grounds:

(1) That the verdict given by the jury was contrary to the weight of the evidence; (2) That the verdict given by the jury was contrary to law; (3) That the court erred in overruling defendant's motion to take the case from the jury and direct a verdict for defendant and in excluding testimony by defendant and admitting testimony objected to by defendant.

In *Weaver* v. *Railway*, supra, Judge Bradbury, in discussing the statutes on the subject of new trials, bills of exceptions, etc., says, page 494:

"The sixth subdivision of section 5305 [Lan. 8821], prescribes that a new trial may be had on the ground 'that the verdict, report or decision is not sustained by sufficient evidence or is contrary to law' * * * is broad and comprehensive. It would seem to include any error of law committed by the trial court in the course of a trial prejudicial to the losing party."

We conclude that according to the views of the Supreme Court expressed by Judge Bradbury, this motion for a new trial containing the ground that the verdict was contrary to law includes the error of the court in its charge to the jury; and that, therefore, the bill of exceptions prepared within forty days from the overruling of that motion was prepared in due time.

On account of the errors in the charge above indicated, the judgment of the court of common pleas will be reversed.

**Haynes** and **Wildman**, **JJ.**, concur.